IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

FEB - 8 2022

ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 2:22CR3-KHJ-MTP

LLOYD CLINTON WILSON
a/k/a Butch Wilson

18 U.S.C. § 1343
18 U.S.C. § 1349

**The Grand Jury charges:**

At all times relevant to this Indictment:

INTRODUCTION

1.    Defendant **LLOYD CLINTON WILSON a/k/a Butch Wilson ("WILSON")**
owned a business named BBT Utility Sales ("BBT"), also known as BBT Services, operated
from a location at or near White House, Tennessee.

2.    MDR Construction, Inc. ("MDR") is a Mississippi corporation with its principal
office in Columbia, Mississippi.  This principal office is in Marion County, Mississippi, which is
located in the Eastern Division of the Southern District of Mississippi.

THE SCHEME AND ARTIFICE TO DEFRAUD

3.    Beginning at least as early as October 2019 and continuing through in or about
December 2019, in Marion County, in the Eastern Division of the Southern District of
Mississippi, and elsewhere, the defendant, **LLOYD CLINTON WILSON a/k/a Butch Wilson**,
did knowingly and intentionally devise a scheme and artifice to defraud MDR Construction, Inc.
by causing wire transfers of funds from MDR Construction, Inc. under false and fraudulent
pretenses, representations, and promises, thereby misappropriating MDR's money for the
defendant's own benefit and the benefit of others.

4.    On or about October 15, 2019, **WILSON** called an employee of MDR, T.B.

During their conversation, **WILSON** and T.B. began talking about the equipment needs of MDR. Specifically, T.B. and **WILSON** discussed MDR's need for certain types of trucks for an upcoming project. The employee had previously conducted business with **WILSON**, who had sold him trucks in the past while **WILSON** was working for a different company.

5. During this telephone conversation, **WILSON** represented to T.B. that he could broker the delivery of trucks to MDR meeting certain specifications required by the company. The same day, over email and text message, **WILSON** provided T.B. with pictures of the trucks as well as equipment details, including year, make, model, and mileage of the vehicles. In the body of one email from **WILSON** listing some of the truck specifications and attaching photographs, **WILSON** represented the trucks will have 20,000-pound winches installed and would be delivered the following week. Based on representations made by **WILSON** regarding the price and timeline of delivery for the trucks, MDR expressed an interest in purchasing three (3) trucks from **WILSON**.

6. Still on or about October 15, 2019, **WILSON** emailed T.B., in his capacity as an employee of MDR, two documents. First, **WILSON** emailed an Invoice/Bill of Sale for three (3) 2020 Freightliner C4047 Flat Bed trucks with 20,000-pound front winches installed, each costing $197,000.00, for a total cost of $591,000.00. The offer was contingent upon MDR paying $177,300.00 as a down payment, with the remaining $413,700.00 due at delivery. The offer was signed by "Butch Wilson." Second, **WILSON** also emailed a form containing incoming wire instructions to T.B., identifying that the wire transfer of funds should go to an account ending in X0201, belonging to "BBT Services," at German American Bank, located at 711 Main Street, Jasper, Indiana 47546. The address associated with account X0201 was listed on this form as 886 Bluegrass Road, Apartment A4, Franklin, KY 42134. In the body of the email **WILSON** sent to T.B., **WILSON** advised that if he received the down payment the same

2

day, he could have the winches moving the next day.  T.B. advised **WILSON** via text message that the wire was going out the same day and **WILSON** advised that the trucks should start arriving Tuesday afternoon.

7.     Based on the representations made by **WILSON** regarding the pricing and timeline regarding the acquisition of trucks with agreed upon specifications, on or about October 15, 2019, an employee of MDR placed an outgoing wire transfer from its Trustmark National Bank account ending in X1607 to the destination account of BBT Services ending in X0201 at German American Bank, as described in the incoming wire instructions form provided by **WILSON**.  The wire transfer was completed for the amount of $177,300.00.

8.     Following this initial order, **WILSON** failed to make the delivery of the trucks to MDR according to the agreed timeline.  **WILSON** and T.B. had follow-up conversations regarding the status of the order and **WILSON** stated he was not able to get the trucks from his original source but had secured alternative trucks through another vendor.  **WILSON** led T.B. to believe that he had secured these alternative trucks and represented that, because of the change of vendors, **WILSON** needed an additional payment for winches to be installed on the trucks to meet the delivery deadline set earlier by MDR.

9.     Following these conversations, on or about November 5, 2019, **WILSON** emailed T.B., in his capacity as an employee of MDR, an Invoice/Bill of Sale for three (3) 20,000-pound winches, plus labor, paint, and installation costs, each costing $15,000.00, for a total cost of $45,000.00.  The offer specified that the price of the winches was to be deducted from the sale price.

10.    As before, **WILSON** also emailed the same incoming wire instructions form to T.B. as before, identifying that the wire transfer of funds should go to account X0201 at German American Bank belonging to "BBT Services."

3

11.     Based on the representations made by **WILSON** regarding acquisition and installation of the winches on the alternative trucks, on or about November 6, 2019, employee of MDR placed an outgoing wire transfer from its Trustmark National Bank account ending in X1607 to the destination account of BBT Services ending in X0201 at German American Bank, as described in the incoming wire instructions form provided by **WILSON**. The wire transfer was completed for the amount of $45,000.00.

12.     Following the second wire transfer, the contracted trucks were never delivered to MDR. Between on or about November 6, 2019, and continuing until on or about December 5, 2019, **WILSON** made additional excuses to explain the delay in delivery of trucks as contracted. **WILSON** claimed to have received delivery of the trucks from his source multiple times and continued to promise that the trucks would soon be delivered to MDR. Finally, on or about December 5, 2019, **WILSON** told T.B. that he would not be able to deliver the trucks and that MDR's money would be returned.

13.     Between on or about December 5, 2019, and continuing until on or about December 16, 2019, **WILSON** repeatedly told T.B. and other MDR employees that he would return the money, either by wire transfer, mail delivery, or by personally bringing a check to an MDR employee. **WILSON** failed to return the money in every instance and eventually stopped communications with MDR.

14.     It was part of the scheme and artifice to defraud that defendant **WILSON** caused MDR to wire transfer money to the defendant while knowing that the promised goods and services were not available to fulfill **WILSON's** contractual obligations. Defendant **WILSON** did not have the ability to obtain the trucks he offered to MDR and fraudulently represented his ability to obtain and deliver the trucks to MDR as a means to defraud MDR and cause MDR to wire transfer him money. It was further part of the scheme and artifice to defraud that defendant

4

**WILSON** misrepresented the status of alternative trucks and winches, thereby causing a second wire transfer from MDR.

15.    It was part of the scheme and artifice to defraud that defendant **WILSON** knew and intended that his false and fraudulent pretenses, representations, and promises would induce MDR to disburse money to him and would cause MDR to suffer financial losses while the defendant and others benefitted from the fraudulent scheme.  Between the two fraudulently induced wire transfers, **WILSON** defrauded MDR out of $222,300.00.

INTERSTATE TRANSFER OF FUNDS

16.    Trustmark National Bank is headquartered in Jackson, Mississippi.

17.    When Trustmark National Bank sends a wire transfer of client funds, the wire is sent to the Federal Reserve, who then debits Trustmark's American Bankers Association ("ABA") Routing Number and credits the receiving financial institution's ABA Routing Number.  The Federal Reserve system has branches all over the United States, but none in Mississippi.

18.    German American Bank is headquartered in Jasper, Indiana.

COUNTS 1-2

19.    The United States realleges and reincorporates by reference the allegations set forth in paragraphs 1 through 18.

20.    Beginning at least as early as October 2019 and continuing through December 2019, in Marion County, in the Eastern Division of the Southern District of Mississippi, and elsewhere, defendant **WILSON** attempted to and did unlawfully, willfully, and knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money from MDR by means of false and fraudulent pretenses, representations, and promises.  In executing this scheme and artifice to defraud, **WILSON** knowingly and willfully obtained money from MDR by means

5

of materially false and fraudulent representations, pretenses, and promises, and in furtherance thereof, did cause electronic wire communications to be transmitted in interstate commerce for the purpose of executing the scheme, and attempted to do so, in that **WILSON** initiated fraudulent transactions transferring funds from an account in the State of Mississippi, through the Federal Reserve, to an account in the State of Indiana, as follows:

| COUNT | DATE OF WIRE (On or about) | DESCRIPTION |
|---|---|---|
| 1 | October 15, 2019 | Interstate wire transfer of funds in the amount of $177,300.00 from MDR's Trustmark National Bank account in Mississippi, Bank Account Number X1607, through the Federal Reserve, to **WILSON**'s BBT Services account at German American Bank in Jasper, Indiana, Bank Account Number X0201. |
| 2 | November 6, 2019 | Interstate wire transfer of funds in the amount of $45,000.00 from MDR's Trustmark National Bank account in Mississippi, Bank Account Number X1607, through the Federal Reserve, to **WILSON**'s BBT Services account at German American Bank in Jasper, Indiana, Bank Account Number X0201. |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461, the United States gives notice to the Defendant that upon conviction

of Counts One or Two of this Indictment, all property, real or personal, which constitutes or is

derived from proceeds traceable to the violation, is subject to forfeiture.  The Defendant is

notified that in the event that property subject to forfeiture, as a result of any act or omission of

the Defendant,

   (i)     cannot be located upon the exercise of due diligence;
   (ii)    has been transferred or sold to, or deposited with, a third party;
   (iii)   has been placed beyond the jurisdiction of the court;
   (iv)    has been substantially diminished in value; or
   (v)     has been commingled with other property that cannot be divided without
           difficulty;

then the United States will seek to forfeit any other property of the Defendant up to the total

value of the property subject to forfeiture pursuant to Title 21, United States Code, Section

853(p), as incorporated by reference in Title 18, United States Code, Section 982(a)(2) and (b);

and Title 28, United States Code, Section 2461(c).

DARREN J. LAMARCA
United States Attorney


A TRUE BILL:

s/signature redacted

Foreperson of the Grand Jury


   This Indictment was returned in open court by the foreperson or deputy foreperson of the
Grand Jury on this the 8th day of February 2022.

UNITED STATES MAGISTRATE JUDGE